This is a case where there is no dispute between Mr. Buchanan and I on two issues. The first issue on which there is no dispute is that the major issue at trial was Petitioner's state of mind when he stabbed his wife in the back. Was it a premeditated and deliberate act of first degree murder as the prosecution theorized or was it an act done in heat of passion, sudden quarrel, or unreasonable self-defense? Or was it an act done in the throes of a manic episode brought on by Mr. Parley's bipolar disorder that prevented him from premeditating and deliberating his act? Those were the three defense theories. The second point on which there is no dispute between Mr. Buchanan and I, and that is that the trial court committed six evidentiary errors in this case, one of federal constitutional dimension and five of state law variety. They have a sort of interesting symmetry, and that is every time the trial court erred in admitting evidence, it was evidence that went against the defendant, the Petitioner, and every time he excluded evidence, it's evidence that would have been admitted that would have helped his defense, right? Correct. I don't dispute that. I don't dispute that. The dispute between the parties is whether the California Court of Appeal unreasonably applied Chambers v. Mississippi when it held that the cumulative effect of these six evidentiary errors in this case did not deprive Mr. Parley of a fundamentally fair trial. We submit that there are several reasons that support the conclusion that under the AADPA, the State court decision should be upheld. First, we know that the decision, the question of whether the cumulative effect of errors rises to the level of a prejudicial due process violation, whether the defendant was deprived of a fundamentally fair trial, requires application of a general rule. And as the United States Supreme Court said in Yarborough v. Alvarado, the more the case by case determinations. The second point, I think, which supports the trial court, and this goes, I think, to Judge Hawkins's concern, is that one staple of evidentiary error, harmless error review, which is essentially what we're doing, is the cumulative nature of the evidence. And the State court, to our mind, reasonably found that each time the trial court erred in excluding evidence that was favorable to the defense, there was other evidence already in the record that supported that position. And similarly, every time the trial court erred in allowing the prosecution to present, erred in permitting the prosecution to present more evidence, there was already properly admitted evidence on those same points. Let's just focus on two. The trial court excluded evidence that the victim, the wife in this sort of war of the roses relationship these folks had, had two or three weeks prior to the event threatened to kill the husband, right? Correct. And the defense wanted to put that in. The judge said no. That's correct. And at another point in the trial, the prosecution wanted to put in evidence that five years earlier than the homicide, the petitioner had threatened a law enforcement officer. Correct. In a case wholly unrelated to domestic violence. Correct. Okay. On the second one, how do you unring that bell? How do you present other evidence that unrings this, the bell of this improperly admitted evidence about the prior threat to a law enforcement officer? The fact that the record is filled, literally filled with Mr. Parole's threats against others, threatening to kill and maim the friends of Mary, the Lees, all the times he threatened to kill Mary, all the times he threatened to kill Christopher, all of that was properly admitted evidence. I agree. The trial court erred in allowing the jury to hear about the threat against the officer. The State Court of Appeal held that error did not prejudice the defendant because there was all this other evidence of Mr. Parole's threats. Was that an objectively unreasonable determination? That we might reasonably disagree on that isn't enough. And I submit that it was reasonable for the State Court of Appeal to determine – I'm sorry, Your Honor. Just for purposes of orienting the language we're using here, can you give me an example, perhaps hypothetically, of what you would consider to be an unreasonable – objectively unreasonable ruling? Because we've heard a great many times that even though it's error, it is not objectively unreasonable. Even though we don't agree with it, it's not objectively unreasonable. Give me an evidentiary ruling which we would think of as objectively unreasonable. Well, I would submit we could go to Chambers v. Mississippi itself, where the ruling was you cannot – we're not going to – Chambers was a 1973 case. It was before Ed. Okay. You're asking me for an AEDPA case in which this Court has found an objectively unreasonable ruling. Rejection of evidence. I should know that, and I could find that out for Your Honors. I don't have one on the top of my head. I just haven't found one yet, and I'm starting to wonder if that's such a beast that was in Congress's intent. Well, I – let me say this. In Williams v. Taylor, the Supreme Court said reasonableness is a term familiar to Federal judges, and they will know how to apply it. Okay. We know that. We deal with negligence all the time. But what is objectively unreasonable? Well, we know – I wish I could do better than just cite back to Your Honors the language of the Supreme Court, and the Supreme Court said it's not enough to just be erroneous. It can be an erroneous ruling, but that doesn't make it – The Supreme Court has told us what it is not, but it hasn't told us what it is. Your Honor, I would be happy to find, and I'm sure they exist, cases in which this Court has found a State court ruling to be objectively unreasonable. How about combining it with another event in the trial? Well, in this case, the trial court excluded evidence the defense wanted to put on about the probable impact of bipolar or manic depressive behavior on the defendant's state of mind at the time of the murder. Right? Correct. And the trial judge erroneously said you cannot put that evidence in. Right? Right. Correct. And then at final argument, the prosecutor argues to the jury about the absence of evidence of manic depressive behavior affecting state of mind. Right? That's correct as well. Okay. Does that external event help us in the analysis of this particular exclusion? I'm sorry, the external event being the prosecutor's? Yes. Well, the prosecutor's argument hurts my position, obviously, unless the State court of appeal in rejecting that was reasonable. And they argued, well, the defense had other evidence, there was other evidence before the jury from which they could have concluded that his bipolar disorder kept him from premeditating and deliberating. Now, the response is, well, the prosecutor argued that there wasn't. The response to that is, the prosecutor isn't always right and the jury isn't always going to believe it just because the prosecutor told them that that was the case. Okay. Again, it gets back to the State court of appeals determination that each one of these errors had other evidence from which the jury could have relied in finding on the issue before the jury. I would point out, again, that this Court has already ruled on one of them in the first. Just a minute, though. Even though one were to accept that, that's not the same as saying then cumulatively, therefore, right? Well, that's true, Your Honor. I might have misspoke. That was the State court of appeals determination when it got to its cumulative analysis. Its cumulative error analysis was premised on the fact primarily that all of the evidentiary errors dealt with evidence that was otherwise cumulative. Unless the Court has any further questions of me, I don't see any. Thank you for your argument. Mr. Buchanan. Morning, Your Honors. May it please the Court, Martin Buchanan appearing for the Petitioner and Appellee Chuck Parle. First of all, I'd like to address Your Honor's comment about the unreasonable standard. There are a number of cases, of course, where the Ninth Circuit has found the State court's decision to be unreasonable, and I think the one that's most pertinent here would be Thomas v. Hubbard, because that's a case where the Ninth Circuit found a State court's analysis of cumulative error, such as we're talking about here, and particularly cumulative evidentiary errors, to be unreasonable. And I can't define unreasonable for you. I think Your Honor is correct that the Supreme Court hasn't definitively defined it, and that kind of puts the ball on your lap to decide what is reasonable and what is unreasonable. Aside from Thomas v. Hubbard, we've cited a number of cases in our brief where the Ninth Circuit has found State court decisions to be unreasonable, including Taylor v. Maddox, Bailey v. Ray, and I'm sure there are innumerable others. I think the fundamental flaw with the State's position in this case, the basic logical and legal fallacy with it, is that they were trying to defend the State court's decision that merely because this evidence was cumulative of other evidence that was presented at trial, that by definition makes it harmless. And what Judge Alsop did was he looked at U.S. Supreme Court precedents to determine whether that is an objectively reasonable way to go about determining prejudice. And Judge Alsop concluded, based on decisions like Chambers and Krulowich and Hawkins, that it's unreasonable to simply label evidence as cumulative without looking to whether the effect of that improperly excluded and improperly admitted evidence could have shifted the evidentiary balance on an otherwise clear basis. And in Chambers? Yeah. Yeah. What Judge Alsop found was that the evidence that the improperly excluded and improperly admitted evidence in this case was just as damaging to the key defense as the improperly excluded evidence in Chambers.    I think it's a perfect example of that. It's a perfect example, and I think Judge Alsop explained it at great length, why Chambers supports his decision that it's objectively unreasonable to merely label evidence as cumulative. Chambers itself is a case where identity was the issue, and Chambers was arguing that a fellow named McDonald committed the murder. While Chambers was able to present at trial voluminous evidence that McDonald committed the murder, there was evidence that an eyewitness, a longtime friend of McDonald's, saw him commit the shooting. There was evidence that another witness at the scene was looking at Chambers at the time of the shooting and testified that Chambers did not commit the shooting. That was also presented to the jury. There was evidence from yet another witness that McDonald had a pistol immediately after the shooting. And then there was a written, signed, sworn confession that McDonald made that was admitted at trial in Chambers and read to the jury, and as if that were not enough, there was yet another witness who testified at trial in Chambers and who contradicted McDonald's alibi defense. So Chambers had ample, ample evidence to dispute his identity as the shooter and identify McDonald as the shooter, and yet in Chambers itself, the Supreme Court still finds a due process violation based on the cumulative effect of the errors, and the most notable errors are that Chambers was unable to present evidence that he also orally confessed to three friends. Now, that is the epitome of cumulative evidence. Those oral confessions that McDonald made to his three friends are completely duplicative of his written, sworn confession that was admitted to the jury and that was read to the jury. That was cumulative evidence. The point is, when you have an extremely close case, as we have here, when you have cumulative and find it harmless on that basis, because it could have been what tipped the scale, and that's what Judge Alsup found based on Krulowich, based on Hawkins, based on Chambers. That's a perfectly reasonable analysis based on U.S. Supreme Court precedent, and the reason the state court's decision was unreasonable is because the state, you can look through that entire 58-page opinion by the state court. There is not one reference to the strength of the evidence of premeditation or the strength of the evidence that this killing was not committed in a heat of passion. And recall that it's the prosecution's burden to prove both. The prosecution bears the burden of showing that the killing was not in a heat of passion. All the defense needs to do is raise a reasonable doubt about that issue. Nowhere did the state court of appeal analyze this overall strength of the evidence. It's not until this case got to Judge Alsup that anybody took a dispassionate view of the evidence as a whole to determine how strong was the prosecution's case. How clear was it that this was a first-degree premeditated murder versus, say, a second-degree unpremeditated murder or a voluntary manslaughter? And Judge Alsup recognized what the state has conceded, that there was, in fact, plenty of evidence. In fact, the state says on page 57 of its opening brief, there was a substantial amount of evidence that Mr. Parle acted under the sort of provocation which would cause a reasonable person to act rashly from passion rather than judgment or without premeditation. I've just given you a quote from the state's brief. But that's also true, that there was some evidence and there was plenty of evidence that Parle acted out of heat of passion, that he had a serious bipolar disorder, that Dr. Jackman says that when he was at the expert opinion, he was suffering from a manic episode on the night of the murder. He was described by the people, by his father, as babbling immediately afterwards. There was evidence that he was acting irrationally on the night of the murder. So the state says no harm or foul. Yes. And I think the answer to that is that kind of analysis is inconsistent with Chambers. It could have been said in Chambers as well. There was evidence that McDonald committed the crime. There was evidence that McDonald confessed to the crime. There was evidence that Chambers did not commit the crime. But because the case was otherwise so close, the evidence that was excluded could have made the difference. And with respect to Dr. Jackman's testimony, Your Honor, that evidence that was excluded was absolutely critical. Dr. Jackman was a defense expert who had reviewed the defendant's medical records, who had viewed the tape of his interrogation on the night of the crime, and he testified that based on his review of those records, Mr. Parle was suffering from bipolar disorder type 1, which is characterized by manic episodes, and that in fact he was suffering from a manic episode at the time of the crime. So then he wants to tell the jury, well, why is that significant? What difference does it make that he was suffering from a manic episode? So he wants to tell the jury, people suffering from manic episodes, and this is a quote from what he attempted to testify to, their judgment is impaired, they're impulsive, they don't stop to consider consequences or alternatives, they tend to act, think, and behave in a relatively rash manner. That testimony is stricken, stricken improperly, and that goes directly to the core of premeditation and deliberation. What I think is the question, maybe the question here, was was there an objectively reasonable basis for the state court to determine that what got into evidence was not, to use the language of the chambers, far less persuasive, unquote, than what was barred or got in an error, and therefore depriving the defense? Yes. I don't think there is an objectively reasonable basis for that. There was no other evidence that was even similar to what I just testified from Dr. Jackman's testimony. His testimony there went directly to the core of premeditation and deliberation. The definition of premeditation and deliberation... Give me that evidence again. The quote? Well, the substance of what you just said, because I was taking a note on something else. I'm sorry. His testimony that I read just earlier, that was improperly stricken, goes directly to the core of premeditation and deliberation, about whether somebody with a manic episode has the ability to premeditate by weighing and considering the consequences. Can he answer that in California? Yes, he can. Does he have the ability? Under Section 25 and 29 of the Penal Code, as I understood it, the defense of diminished capacity has been eliminated by voter referendum in the State of California. You can testify, you can have an expert witness testify as to whether he did deliberate or premeditate, but you cannot have the circumstantial evidence introduced that he had no capacity to deliberate or premeditate. Your Honor, the issue you're inquiring about is exactly what was litigated in the State Court of Appeal. Whether this testimony was admissible under Penal Code Section 28 and 29. And the Court of Appeal, citing a holding called People v. None, N-U-N-N, says in California this type of testimony is admissible and was wrongfully excluded. It doesn't go to his capacity to deliberate. It goes to whether he was actually deliberating or premeditating the crime. You can testify as a psychologist in California about what the symptoms of a manic episode would generally look like for the jury to evaluate whether someone suffering from a manic episode was actually deliberating or premeditating the crime. So that issue has been resolved as a matter of California law in this case. It's never been contested. That testimony should have been admitted. And its harmfulness, the harmfulness of its exclusion is particularly apparent when you look at the closing arguments. Because when defense counsel tried to argue that very point to the jury in closing argument, that Dr. Jackman's testimony indicated that his client probably did not have the ability to premeditate and deliberate the crime, he's interrupted with an objection from the prosecutor. The objection is sustained. He can't make the argument. He can't use Dr. Jackman's testimony to show absence of deliberation and premeditation. And then when the prosecutor stands up and gives his rebuttal argument, he says this. He tells the jury there was a he refers to his objection to defense counsel's argument. There was a point that I objected during his argument. The reason I objected is that there is no evidence in this case that bipolar disorder has an impact on one's ability to premeditate and deliberate. I'm sure that's what he would like you to believe. But that's what he argued, what the defense counsel argued. He said he's less likely to be carefully weighing and considering the consequences of his actions, probably more likely to be rash and impulsive, less likely to be thinking things through as a result of Jackman's testimony that Parra was suffering from a manic episode on the night of the murder. But then about five minutes later, Your Honor, he makes the same argument. He says he's less able to deal with the antagonism that was inherent in the relationship, apt to be more rash, more impulsive as a result of this order, less able to exercise good judgment. And that's when the prosecutor says objection, sustain. The prosecutor asks to have the last two or three sentences stricken. And the judge says, well, the arguments of counsel are not evidence. And then the prosecutor really hammers it home in his final rebuttal argument where he says to the jury, flat out, over defense objection, the evidence is that bipolar disorder has not been testified to as diminishing a person's ability to premeditate or deliberate at all. So he's telling the jury, Dr. Jackman's testimony is not evidence that he's unable to premeditate and deliberate. And I think it's the cumulative impact of that error, in particular with the error in having Mr. Parle's own psychiatrist to take the stand against him, the error in having Mr. Parle's own medical records used against him in violation of the privilege, that makes this whole, the cumulative effect so devastating to Mr. Parle's defense. And with respect to Mr. Parle's own psychiatrist, her name was Dr. Asinas. Again, the state court has definitively ruled it was error for the trial court to allow Dr. Asinas to testify as a prosecution witness. It was error to admit the defendant's psychiatric records that Dr. Asinas brought with her from Kaiser. And Dr. Asinas directly contradicted Dr. Jackman. So this is really a double whammy type of error. Dr. Jackman testified that Mr. Parle was suffering from bipolar disorder type 1, the more severe form, with manic episodes. Dr. Asinas' wrongfully admitted testimony says the contrary. He's suffering from bipolar disorder type 2, a much less severe form, not characterized by manic episodes. So you have, Dr. the defense being cut off at the knees in its attempt to use Dr. Jackman to show lack of deliberation and premeditation, and at the same time improperly admitted evidence on the prosecution's side by the defendant's own psychiatrist taking the stand against him and contradicting Dr. Jackman's testimony. And Dr. Asinas also testified the defendant did not exhibit any manic behavior during the time she was treating him, that his mental problems were under control with his medication the week before the stabbing when she last saw him. She testified that the defendant never made any specific complaints about Mary's conduct, totally undermining his defense of provocation. She testified the defendant had unusual thoughts and thoughts of hurting others long before the homicide, and he identified his wife in particular as a stressor that made him ready to explode. And the prosecutor, of course, used this evidence in closing argument to prove premeditation and deliberation. The prosecutor, his whole theory of premeditation and deliberation was that the defendant wanted to get rid of Mary because he identified her as the source of all of his problems. And the prosecutor says at page 3516-17, remember that he sought psychiatric help and he had 34 out of 37 problems, including ready to explode and ready to blow up. Why? I got a wife who I can't stand. Can't stand her. In any event, Mr. Parle thought that night he really thought that when she died his troubles would be over. So the prosecutor actually used Dr. Acenas' testimony to bolster its case of premeditation and deliberation. And, again, what's critical is how all of these errors interacted with each other. Individually, perhaps we would say they were harmless. I don't know. I have doubts about that. But collectively, when they impact together to put additional weight on the prosecution side of the scale and take off weight on the defense side of the scale, they're devastating. On the one hand, you have his own psychiatrist testifying against him improperly. On the other hand, you have his expert not being allowed to present his full story. On the one hand, you have improperly inflammatory evidence of threats against a police officer that have absolutely nothing to do with this case, that the police officer testified in his entire 17 years on the force. He'd never taken threats so seriously. And then, at the same time, you don't allow the defendant to testify when he takes the stand about the threats that the victim was making to kill him the week before this whole incident occurred. Consistently, throughout this trial, the trial court was taking evidence away from the defense and giving it to the prosecution. And, again, I want to return to the basic point, which is this was a closed case. The state concedes that. In a closed case, U.S. Supreme Court precedent clearly indicates that evidentiary errors, even individual errors, are more likely to affect the result of the verdict. In a case where there are collective ---- I have a several-part answer to that. First, it was objectively unreasonable. What's the best case that supports your position? First, that it was an unreasonable application of Chambers v. Mississippi. Objectively unreasonable. Objectively unreasonable application of Chambers, Krulowich, and Hawkins. I know that.  Chambers, Krulowich, and Hawkins. All three of those cases collectively stand for the proposition that errors cannot simply be dismissed as cumulative where they could have been. I know that. We know what Chambers says. And even assuming that, you know, we'll say somebody could say the state court's analysis was error under Chambers, what case supports a proposition that was objectively unreasonable? Well, I think you're getting to the same question. In spite of the fact that it was erroneous. Give me a citation. That's all I want. Okay. I'll give you this one. Thomas v. Hubbard. And that's ---- Thomas v. Hubbard doesn't, I don't think, help you because, you know, Thomas v. Hubbard was decided before we were told that a state court analysis could be erroneous. That's not correct, Your Honor. Thomas v. Hubbard. It would still be objectively reasonable. Thomas v. Hubbard is an EBPA case. I know that, but it doesn't make that analysis. It just simply goes back to, I forgot, an earlier case and just says, well, if it's clear error, then, you know, it violates the EBPA. It doesn't go through the objectively unreasonable analysis. It does find that the state court's analysis of cumulative error was objectively unreasonable. And we'll find that it was clearly erroneous. It doesn't ---- I don't think Thomas v. Hubbard makes an objectively unreasonable analysis. And I think it preceded the Supreme Court cases about, you know, even though a state court's judgment is erroneous, that doesn't necessarily mean it's objectively unreasonable. I'm quite confident, Your Honor, and perhaps we just need to go back and look at the case. Why don't you show me the ---- you gave me the citation. Anything else besides Thomas v. Hubbard on it? Yeah. Precisely the question that Mr. Shima has asked you, which is a post-EDPA case. Yes. Discussing state courts' objectively unreasonable analysis of cumulative evidentiary error. The only one I know of of cumulative evidentiary error is Thomas v. Hubbard. Now, I think an example ---- and I don't think it makes much difference whether, when you're talking about prejudice, whether it's cumulative error or individual error. And I think another example of an objectively unreasonable analysis of individual error is the Supreme Court's decision in Williams v. Taylor. And in that case, the U.S. Supreme Court, that dealt with the prejudice aspect of the Strickland analysis for ineffective assistance of counsel. And the U.S. Supreme Court did find that the state court's analysis of prejudice in that case was objectively unreasonable for two reasons, one of which I think is pertinent here. And that is that the state court failed to accord appropriate weight to the body of mitigating evidence that was available to the defense attorney and was not presented at trial. And I think the same analysis applies here. The state court failed to accord appropriate weight to the body of evidence that this was a heat of passion killing, either voluntary manslaughter or second-degree murder, and that the cumulative collective impact of all these errors, as they interacted together, could have decisively tipped the scales against the petitioner. And that's what Judge Alsup recognized. I believe it was a correct application of AEDPA, a correct application of U.S. Supreme Court precedents on due process on prejudice. And for that reason, I would submit that judgment should be affirmed. Okay. Thank you for your argument. Rebuttal, Mr. Ortega? Very briefly, Your Honor. I simply have four points I'd like to make. Mr. Buchanan makes much of the fact that the state court, nowhere in its opinion, made a determination on the strength of the evidence. Of course, under the AEDPA and this Court's precedents, this is an unreasonable application case. We're judging the state court's decision, not its reasoning process. So if this Court can make the conclusion that the evidence here on first-degree murder was stronger, much stronger, than the evidence supporting voluntary manslaughter or second-degree murder, it doesn't matter that the state court never expressly made that same statement. Secondly, I'm a little confused on Petitioner's argument with respect to Chambers and the cumulative nature of the evidence in Chambers. I thought I heard him to be arguing that because the United States Supreme Court in Chambers did not say the evidence is harmless because it was cumulative in other respects, that the fact that evidence is cumulative can never, as a matter of law, factor into a harmless error analysis. And we know that's not true. This very Court in the first opinion in this case stated the fact that the Petitioner was able to testify to a plethora of other threats made against him by his wife, made the erroneous exclusion of other threats harmless because it was cumulative. This is not a Chambers case. Chambers was about the wholesale denial of the right to confront and cross-examine an adverse witness, a violation of the right to present witnesses in his own defense. It was the exclusion of evidence. The Supreme Court, subsequent to Chambers, has said the exclusion of evidence we declared unconstitutional in Chambers significantly undermined the fundamental elements of the defendant's defense. That is not this case. The errors did not significantly undermine the fundamental elements of the defendant's defense. And that we can reasonably disagree on that question doesn't make the State court objectively unreasonable. Unless the Court has any further questions. Roberts. I don't see any. Thank you for your argument, counsel. Thank both sides for their argument. Very interesting case. It's submitted for decision, and the Court will stand in recess for the day. Thank you.
judges: Hawkins, Tashima, Bea